629 F.2d 490
 George E. HIRRILL, Appellant,
v.
John T. MERRIWEATHER and Carelton E. McMullen, Individually
and as City Managers of the City of Little Rock, Arkansas;
George Wimberly, Individually and as Mayor, a member of the
Board of Directors and a member of the Police Pension Fund
Board; A. M. Keith, Warren Baldwin, Jr., William H. Walters,
Jack Young, Perlesta Hollingsworth, Jim Dailey, Dwight
Linkous and Charles Bussey, Individually and as members of
the Board of Directors of the City of Little Rock; Peyton E.
Rice, Fred G. Hook, Charles C. Crawford, Jr., Roy Beard and
Glen F. Rogers, Individually and as members of the Civil
Service Commission of the City of Little Rock, Arkansas;
Gale F. Weeks, Individually and as Chief of Police of the
City of Little Rock, Arkansas; Bill Sanford, Jack Murphy,
Dr. Gordon Holt and Lloyd R. Haynes, Individually and as
members of the Police Pension Fund Board of the City of
Little Rock, Arkansas, Appellees.
 No. 79-1081.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 5, 1979.
Decided Jan. 16, 1980.
 
 Clifford E. Jackson, Solloway & Jackson, Little Rock, Ark., for appellant.
 R. Jack Magruder, III, City Atty., Little Rock, Ark., for appellees.
 Before GIBSON, Chief Judge,* and STEPHENSON and HENLEY, Circuit Judges.
 HENLEY, Circuit Judge.
 
 
 1
 This is an appeal from a final order of the United States District Court for the Eastern District of Arkansas (The Honorable G. Thomas Eisele, Chief Judge) dismissing with prejudice a civil rights suit brought by plaintiff, George E. Hirrill, a former member of the Police Department of the City of Little Rock.
 
 
 2
 In 1973 plaintiff, while on accumulated sick leave as a patrolman, applied to the Board of Trustees of the Little Rock Policemen's Pension and Relief Fund (Pension Board) for an award of a disability pension due to a foot condition that plaintiff claimed rendered him unable to perform foot patrol duty to which he had been assigned by the then Chief of Police, Gale Weeks. The Pension Board ultimately denied the pension claim, and when plaintiff did not return to work after his sick leave expired he was terminated by Chief Weeks on account of absence without leave. That action of the Chief was upheld by the Little Rock Civil Service Commission, by the Circuit Court of Pulaski County, Arkansas on appeal by plaintiff from the Commission's ruling, and finally by the Arkansas Supreme Court in an opinion rendered on May 24, 1976. Hirrill v. Civil Service Commission of City of Little Rock, No. 75-372, no published opinion.
 
 
 3
 An earlier mandamus action that plaintiff had commenced in the Circuit Court against the Pension Board was ultimately dismissed by that court without opinion or statement of reasons in 1974. There was no appeal from that dismissal.
 
 
 4
 After the action of the Arkansas Supreme Court above mentioned, plaintiff commenced this action in the district court in October, 1976. He named as defendants the members of the Civil Service Commission and of the Pension Board, former Chief of Police Weeks, the present and immediate past City Managers of the City of Little Rock, and the members of the Board of Directors of the City, including the Director who serves as honorary Mayor. Federal subject matter jurisdiction was predicated upon 28 U.S.C. § 1343(3) read in connection with 42 U.S.C. § 1983.
 
 
 5
 The complaint was in two counts, which appear to have been alternative to each other. In both counts plaintiff sought declaratory and injunctive relief together with pecuniary awards, including an award of costs and an attorney's fee. In Count I plaintiff complained of the actions of the Chief of Police and the Civil Service Commission in terminating his employment. In Count II plaintiff complained of the action of the Pension Board in denying him a disability pension. With respect to both counts plaintiff claimed that the administrative actions complained of denied him rights guaranteed by the fourteenth amendment to the Constitution of the United States.
 
 
 6
 The defendants moved to dismiss the complaint for failure to state a claim upon which relief could be granted, Fed.R.Civ.P. 12(b)(6) and for alleged lack of jurisdiction on the part of the district court.[1] In an unpublished opinion the district judge held that the claims set out in both of the respective counts were barred by reference to the principle of res judicata, and the court felt that the holding of the Pulaski County Circuit Court as affirmed by the Supreme Court of Arkansas in No. 75-372 was dispositive of both of plaintiff's claims.
 
 
 7
 A final order having been entered, plaintiff filed a timely notice of appeal. The disposition by the district court of Count I gives us no trouble, but the problem with respect to Count II is more difficult, and an overall discussion of the entire controversy is required.
 
 
 8
 * The City of Little Rock is the capitol of Arkansas and is the State's largest city. For many years its policemen have been protected by municipal civil service and have also been entitled to certain retirement and pension rights.
 
 
 9
 The civil service system is administered by an independent agency known as the Civil Service Commission. See Ark.Stat.Ann. §§ 19-1301, as amended, and 19-1601.1, as amended. The system was established originally by Arkansas Act 322 of 1937.
 
 
 10
 The pension system involved in this case was established by Act 250 of 1937, Ark.Stat.Ann. § 19-1801 et seq. That system is administered by the Pension Board which consists of five members and which is also an independent agency. One of those members is required to be a physician, and another member is required to be a representative of the public who holds no other public office. Ark.Stat.Ann. § 19-1803.
 
 
 11
 It is the function of the Pension Board to administer the pension fund established by the statute, and also to make pension eligibility determinations. Ark.Stat.Ann. § 19-1804. And that statute expressly provides that no pension determination made by the Board is to be subject to judicial review. Cf. 28 U.S.C. § 1346(d) and § 1501.
 
 
 12
 A police officer who is discharged or reduced in rank is entitled to written notice, and to an opportunity to be heard before the Civil Service Commission. If the Commission upholds the initial administrative action adverse to the officer affected, he may appeal to the local circuit court. In connection with such an appeal he is entitled to a bench trial de novo on the record, and the circuit judge may also permit the introduction of additional testimony at the request of either party. The judgment of the circuit court may be appealed to the Supreme Court of Arkansas. Ark.Stat.Ann. § 19-1305.
 
 
 13
 If in an action in a federal court it is claimed that prior action by a state court is res judicata, the district court is required to give full faith and credit to the prior state court action, that is to say, to give to that action the same effect that would be given to it by the state courts in later litigation in those courts. 28 U.S.C. § 1738.
 
 II
 
 14
 Plaintiff was employed as a patrolman in 1960, and he was on active duty until 1973. In the spring of that year the Chief of Police for some reason changed the duty assignment of plaintiff and directed that he walk a beat along West Ninth Street in Little Rock, which street runs through a high crime area.
 
 
 15
 Plaintiff availed himself of accumulated sick leave, claiming that due to a condition of his feet he was not able to handle the new assignment which would have been somewhat physically strenuous and which might have exposed the plaintiff to physical encounters with criminals or disorderly persons.
 
 
 16
 While still on sick leave and prior to his final termination in October, 1973 plaintiff filed his application for a pension with the Pension Board and submitted letters from Little Rock doctors. The Board without having plaintiff examined by its own physician member, as provided by Ark.Stat.Ann. § 19-1809, advised plaintiff that for lack of satisfactory medical evidence his application was being denied "at this time." That initial action was clearly tentative and did not preclude plaintiff from submitting additional material to the Board or insisting upon an examination by the physician member of the Board.
 
 
 17
 Instead of taking either of those courses, plaintiff commenced his mandamus suit against the Board in the Circuit Court seeking to compel the Board to award him a pension. Plaintiff alleged that the Board action was illegal, arbitrary and in bad faith.
 
 
 18
 The Board moved to dismiss the complaint.
 
 
 19
 Before any further action was taken in the mandamus case, the Board caused its physician member, Dr. L. Gordon Holt of Little Rock, to examine plaintiff. Dr. Holt did so and also considered what appears to have been certain depositions that plaintiff had obtained from his own doctors. Dr. Holt did not consider that plaintiff was disabled to an extent entitling him to a pension and so advised his colleagues. Immediately after receiving that advice the Board finally denied the application.
 
 
 20
 It was after that denial that Chief Weeks terminated plaintiff, after which the proceedings before the Civil Service Commission and in the Arkansas courts took place.
 
 
 21
 After the Board filed its motion to dismiss the mandamus suit in the circuit court, nothing further was done in that case until June 24, 1974 when the circuit judge to whose docket the case was assigned entered a one line order dismissing the complaint without comment. Plaintiff never made any effort to reopen that case or to appeal the order of dismissal to the Arkansas Supreme Court.
 
 
 22
 There must, of course, have been some reason for the action of the circuit judge in dismissing the mandamus suit. It is possible that the suit was discontinued by agreement; it is possible that it was dismissed for simple lack of prosecution; or the circuit judge might have concluded that he had no jurisdiction in view of the preclusive language of Ark.Stat.Ann. § 19-1804. We do not know what the actual reason was.
 
 
 23
 For convenience we will refer to plaintiff's Count I claim as his "termination claim" and to his Count II claim as his "pension claim."
 
 III
 
 24
 In its memorandum opinion the district court had this to say:
 
 
 25
 28 U.S.C. § 1738 provides in pertinent part:
 
 
 26
 (J)udicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.
 
 
 27
 Under the law of Arkansas, in order for the doctrine of res judicata to apply, it must appear that the particular matter involved was raised and determined or that it was necessarily within the issue and might have been litigated in the previous action. See Howard v. Green, 555 F.2d 178 (8th Cir. 1977); May v. Edwards, 258 Ark. 871 (529 S.W.2d 647) (1975). There is no question, therefore, that under Arkansas law the Arkansas Supreme Court decision in Hirrill would be res judicata as to the claims in this subsequent action, had it been brought in state court, and under § 1738 that conclusion applies equally to this action in this Court. See generally 1B J. Moore, Federal Practice P 0.405-0.418.
 
 
 28
 The plaintiff's suggestion that he should be able to litigate in a federal forum different theories supporting basic constitutional claims that have been finally determined in a state court finds no support in § 1738, and no reason is advanced to justify, on these facts, an exception to the principle of that statute. See Holland v. Perini, 512 F.2d 99 (10th Cir. 1975); Smiley v. State of South Dakota, 551 F.2d 774 (8th Cir. 1977); Goodrich v. Supreme Court of the State of South Dakota, 511 F.2d 316 (8th Cir. 1975); 88 Harv.L.Rev. 453 (1974); Developments in the Law Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1331-43 (1977). Cf. Lombard v. Board of Educ., 502 F.2d 631 (2d Cir. 1974), cert. denied, 420 U.S. 976 (95 S.Ct. 1400, 43 L.Ed.2d 656) (1975); Winters v. Lavine, 574 F.2d 46, 54-55 (2d Cir. 1978).
 
 
 29
 Judgment for defendants will be entered accordingly.
 
 
 30
 We think that the language just quoted adequately and properly disposed of Count I, and as to that count we affirm on the basis of the district court's opinion.
 
 
 31
 As indicated, though, Count II gives us more trouble.
 
 IV
 
 32
 The problem that we have with Count II is complicated by certain factors: As has been observed, the circuit judge who dismissed the mandamus suit brought by plaintiff specified no reason for his action. The mandamus suit was not mentioned by the Arkansas Supreme Court in its opinion dealing with plaintiff's termination claim. The district court did not discuss Count II of the complaint separately from Count I. While the complaint in the district court referred in general terms to the mandamus suit, it is not clear that the record in that suit was part of the record in the district court, and it was not part of the designated record in this court originally. When in the course of the appeal we discovered the existence and possible significance of the mandamus action, we directed that the record be supplemented to include the complete record in that case and that supplemental briefs be filed. Those steps have now been taken, and the supplemented record and supplemental briefs have been given due consideration.
 
 
 33
 We look, first, at the res judicata aspect of the pension claim.
 
 
 34
 While that claim and the termination claim of the plaintiff overlapped to some extent in the sense that both claims involved the question of the existence and extent of plaintiff's physical disability in 1973, they were, nevertheless, separate and distinct claims and were not coextensive. They were considered by different administrative bodies. Although the Arkansas Supreme Court mentioned the pension claim as part of the historical facts of the case, that court did not consider, and could not properly have considered, that claim as well as the termination claim.
 
 
 35
 If plaintiff's pension claim was properly brought before the Arkansas courts for review within the framework of the mandamus case, then it is probably safe to say that the unappealed dismissal of that case by the circuit court would be res judicata as to that claim in this court. And, we will so assume. However, if the preclusive provision of Ark.Stat.Ann. § 19-1804 prohibited judicial review of the Pension Board's decision, then the circuit court in the mandamus action was simply coram non judice and its ultimate dismissal of the case could have no res judicata effect.
 
 
 36
 Although § 19-1804's prohibition of judicial review of a pension decision by a Pension Board is facially absolute, the Arkansas Supreme Court has not squarely passed upon the extent of the prohibition. While the question was presented in Hestand v. Erke, 227 Ark. 309, 298 S.W.2d 44 (1957), the court found it unnecessary to decide it; a waiver of the provision was found in the later case of City of Little Rock v. Martin, 244 Ark. 323, 424 S.W.2d 869 (1968). And Looper v. Gorden, 201 Ark. 841, 147 S.W.2d 24 (1941), did not directly involve what is now § 19-1804.
 
 
 37
 Given this state of the Arkansas law, we are not willing to uphold the district court's disposition of Count II of the complaint on the basis of res judicata.
 
 
 38
 Such being the case, we would ordinarily remand the case for further consideration as to Count II, including specific consideration of the res judicata effect of the proceedings in plaintiff's mandamus case in the circuit court. From our consideration of the record as a whole, however, we are satisfied that the pension claim set out in Count II is wholly without merit, and that further proceedings in the district court would be a waste of time and effort.[2] For the sake of clarity, we will say that we treat the case as to Count II as though the defendants had filed a motion for summary judgment under Fed.R.Civ.P. 56(b)[3] and we will apply Rule 56 standards. As to those standards, we make reference not only to Windsor v. Bethesda General Hospital, 523 F.2d 891, 893-94 (8th Cir. 1975), but also to such cases as Starling v. Valmac Indus., Inc., 589 F.2d 382 (8th Cir. 1979); Bellflower v. Pennise, 548 F.2d 776 (8th Cir. 1977); Robert Johnson Grain Co. v. Chemical Interchange Co., 541 F.2d 207 (8th Cir. 1976).
 
 
 39
 Count II of the complaint consists largely of formal jurisdictional and other allegations, and allegations of the historical facts surrounding the pension claim that have been set out already. Plaintiff's principal complaint is that under the provisions of Ark.Stat.Ann. § 19-1809 the Pension Board should not have rejected his application prior to an examination of plaintiff by the Board's physician member, and that an examination of plaintiff was not conducted by the defendant, Dr. Holt, until after the plaintiff had filed his mandamus suit in the circuit court. It was after that examination that plaintiff's application was finally denied by the Board. Plaintiff contends that when the Board initially denied his application without compliance with § 19-1809, the Board lost its impartiality and became unable to give plaintiff's claim fair and impartial consideration.
 
 
 40
 Count II also contains conclusory allegations that the Board's denial of the pension claim was arbitrary, capricious and in bad faith and discriminated against the plaintiff. Denials of both the due process and equal protection clauses of the fourteenth amendment are claimed.
 
 
 41
 From a consideration of the prayer of Count II, it is evident that what the plaintiff is asking us to do is to require the district court to award him the disability pension that the local administrative agency refused to award him and in that regard to vest 42 U.S.C. § 1983 jurisdiction in the district court by conclusory allegations of unconstitutional motivation and conduct on the part of the Pension Board. Those allegations are not in themselves sufficient for plaintiff's purpose.
 
 
 42
 From a factual standpoint, the gist of the Count II claim is that the Board erroneously took initial action on the claim in violation of state law, and that this error tainted the final action. That contention is simply without merit.
 
 
 43
 As we have pointed out, the initial action of the Board was tentative, and before final action was taken plaintiff was examined physically by Dr. Holt, and the medical material submitted by plaintiff was considered and found inadequate to support the disability claim.
 
 
 44
 No one would question the proposition that plaintiff was entitled to have his pension claim considered by a body of reasonable and fair minded persons who were able and willing to give the claim fair consideration and to grant it if meritorious. On the other hand, plaintiff was not entitled to win his case before the Board on the merits, and he was not constitutionally entitled to have from the Board a decision that in the abstract was "correct" or "right." Panhandle Eastern Pipe Line Co. v. Federal Power Commission, 143 F.2d 488, 496 (8th Cir. 1944), aff'd, 324 U.S. 635, 65 S.Ct. 821, 89 L.Ed. 1241 (1945); Pittsburgh Plate Glass Co. v. N. L. R. B., 113 F.2d 698, 701 (8th Cir. 1940), aff'd, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941). A merely erroneous application of a state statute to a particular case does not present a question of federal constitutional dignity. Snowden v. Hughes, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944).
 
 
 45
 Within the context of public administrative law and procedure, a claimant or litigant is not denied a constitutionally guaranteed fair hearing before an impartial tribunal simply because the agency factfinders or decisionmakers may have had some prior knowledge or even preliminary participation in the case or even though they may have formed some tentative ideas as to the merits of the controversy about to be decided. See Withrow v. Larkin, 421 U.S. 35, 55, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); United States v. Morgan, 313 U.S. 409, 421, 61 S.Ct. 999, 85 L.Ed. 1429 (1941); Klinge v. Lutheran Charities Ass'n of St. Louis, 523 F.2d 56, 63 (8th Cir. 1975); Andrews v. Knowlton, 509 F.2d 898, 907 (2d Cir.), cert. denied, 423 U.S. 873, 96 S.Ct. 142, 46 L.Ed.2d 105 (1975).
 
 
 46
 To sum up our views on Count II, we are convinced that as a matter of law plaintiff's pension claim was adequately considered by a competent tribunal and was not denied unconstitutionally. To put it slightly differently, we are convinced that if this were a jury case, and that if it were tried to a jury in the district court, the district judge would be required to direct a verdict for the defendants. Hence, summary disposition of Count II was proper, as was the summary disposition of Count I.
 
 
 47
 Affirmed.
 
 
 
 *
 The Honorable Floyd R. Gibson was Chief Judge of the Eighth Circuit at the time this case was submitted, and took senior status on December 31, 1979, before the opinion was filed
 
 
 [1]
 The defense claim of "lack of jurisdiction", as such, was clearly without merit, and will not be mentioned further
 
 
 [2]
 Fed.R.Civ.P. 12(b)(6) authorizes the dismissal of a complaint where it fails to state a claim upon which relief can be granted; the Rule also provides that if in passing on the motion the district court looks beyond the complaint (including exhibits) to other materials, the motion is to be treated as one for summary judgment under Rule 56. We think that that course should probably have been followed here, and that the district court should have applied Rule 56 standards and stated its conclusion as to Count II in Rule 56 terms. See discussion in C. Wright & A. Miller, Federal Practice & Procedure, § 2713. The standards under the respective rules are well set out in Windsor v. Bethesda General Hospital, 523 F.2d 891, 893-94 (8th Cir. 1975)
 
 
 [3]
 See n.2, supra