733 F.2d 543
 Mark REEDER, Appellee,
v.
KANSAS CITY BOARD OF POLICE COMMISSIONERS, Norman A. Caron,
Edward S. Biggar, Gwendolyn M. Wells, Beverly
Parks Barker, Richard L. Berkley, and
William Birt, Appellants.
 Nos. 83-1353, 83-1849.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 9, 1984.
Decided May 3, 1984.
Rehearing and Rehearing En Banc Denied May 31, 1984.
 
 Karl F. Schmidt, J. Emmett Logan, Morrison, Hecker, Curtis, Kuder & Parrish, Manfred Maier, Kansas City, Mo., for appellants.
 Paden, Welch, Martin, Albano & Graeff, P.C., Michael W. Manners, C. Robert Buckley, Independence, Mo., for appellee.
 Before ROSS and ARNOLD, Circuit Judges, and HARRIS,* Senior District Judge.
 ARNOLD, Circuit Judge.
 
 
 1
 The law of Missouri, Mo.Rev.Stat. Sec. 84.830(1), forbids officers or employees of the Kansas City Police Department to make any political contribution.[1] Mark Reeder, a Kansas City Police Sergeant, gave $500.00 to the campaign of John Carnes, a candidate for the Democratic nomination for Representative in Congress from Missouri's Fifth District. As a result, he was dismissed from the police force. In a suit filed by Reeder, the District Court held the state statute invalid on two grounds: that it was preempted by Section 301 of the Federal Election Campaign Act Amendments of 1974, Pub.L. No. 93-443, 88 Stat. 1263, 1289, 2 U.S.C. Sec. 453, and that it abridged Reeder's freedom of speech in violation of that portion of the Fourteenth Amendment that applies the First Amendment to the states. We reverse on both these points, but remand for further proceedings on Reeder's claim that the statute deprives him of the equal protection of the laws because it applies to Kansas City police officers but no others in Missouri.
 
 I.
 
 2
 After the oral argument in this Court, the Supreme Court of Missouri decided Pollard v. Board of Police Comm'rs, 665 S.W.2d 333 (Mo.1984) (en banc). Pollard holds that Section 84.830 is neither preempted nor inconsistent with the First Amendment as construed by the Supreme Court of the United States. We are of course not bound by holdings of the Supreme Court of Missouri, just as it is not bound by our holdings. The filing of the Pollard opinion leaves our obligation to consider the issues on this appeal undiminished. We nevertheless find Judge Blackmar's opinion for the Supreme Court of Missouri thorough and persuasive. We agree with it both as to preemption and the First Amendment, and there is no point in repeating an analysis already so well set out. We add a brief discussion to address some points particularly urged in Reeder's brief.
 
 A.
 Title 2 U.S.C. Sec. 453 provides:
 
 3
 The provisions of this Act [the Federal Election Campaign Act of 1971, as amended], and of rules prescribed under this Act, supersede and preempt any provision of State law with respect to election to Federal office.
 
 
 4
 Certainly a law prohibiting certain people from contributing to campaigns for federal office can be considered a "law with respect to election to Federal office." But that is not the end of the matter. The statute can also be read to refer primarily to the behavior of candidates--including, for example, the filing of reports disclosing the names and occupations of campaign contributors--and to supersede state laws on permissible contributions only to the extent that federal law expressly forbids certain kinds of contributions--those, for example, made by unions, corporations, or foreign nationals. Even Reeder seems to concede that some state laws that could be characterized as coming within the preemption provision, if read literally and broadly, remain valid. See Brief for Appellee 11 (States retain the right to prohibit false registration, voting fraud, and theft of ballots, even with respect to federal elections). The preemption statute, then, is not so clear (if any statute ever is) as to preclude us from consulting the legislative history.
 
 
 5
 The conference report on the bill that became the 1974 amendment leaves little room for doubt on this question. The report says:
 
 
 6
 It is the intent of the conferees that any State law regulating the political activities of State and local officers and employees is not preempted or superseded by the amendments to title 5, United States Code, made by this legislation.
 
 
 7
 S.Conf.Rep. No. 93-1237, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Ad.News 5587, 5618, 5669. Furthermore, right before the conference report was agreed to by the Senate, a colloquy took place between Senator Stevens and Senator Cannon that covers this very point. Senator Cannon was Chairman of the Committee on Rules and Administration, from which the bill was reported, senior conferee on the part of the Senate, and manager of the bill on the Senate floor, so his remarks must be given special weight in determining what Congress meant to say. Mr. Cannon stated that "any State law regulating the political activity of State or local officers or employees is not preempted [or] ... superseded." 120 Cong.Rec. 34386 (Oct. 8, 1974). "It [would be] ... up to the State to determine the extent to which they may participate in Federal elections[.]" Ibid. (remarks of Senator Stevens).
 
 
 8
 Sergeant Reeder seeks to avoid the force of this passage by emphasizing the word "activity." It was only active campaigning, such as speechmaking or service on a campaign committee, that was to be left to State regulation, he says. Contributions by state employees were to be governed entirely by federal law, and since no federal law prohibits such contributions, they cannot be forbidden by a State, either. The argument is that "activity" is a term of art, intended to include only those political activities that had previously been prohibited by federal law if engaged in by state employees whose jobs or programs received federal funds. Our attention is called to the Supreme Court's opinion in United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973), in which, in two footnotes, id. at 572-74 n. 18, 576-78 n. 21, 93 S.Ct. at 2893-95 n. 18, 2896-97 n. 21, certain activities forbidden by regulation are listed. It is said that this list of prohibited activities did not include contributions. Therefore, we are told, Senators Cannon and Stevens, when using the term "activity," could not have intended to include contributions.
 
 
 9
 We are not persuaded by this line of argument. In the first place, the single word "activity" is too weak a reed to bear the weight plaintiff asks us to load upon it. We readily acknowledge that the two Senators involved were well versed in their field. But to attribute to them detailed knowledge of two footnotes in a Supreme court opinion decided the previous year, an opinion their colloquy does not even mention, and to infer from that an intention to distinguish between contributions and other types of political "activity," is fanciful. In addition, the two footnotes relied on are not so clear as plaintiff makes out. In general, the Civil Service Commission rules set out in note 18 did allow "[v]oluntary contributions to campaign committees and organizations." 413 U.S. at 574 n. 18, 93 S.Ct. at 2894 n. 18. But they also provided: "Contributions by persons receiving remuneration from funds appropriated for relief purposes are not permitted." Ibid. And the rules quoted in note 21, while allowing political contributions in general terms, also authorized agency heads to prohibit any "activity permitted by paragraph (a) of this section,[2] if participation in the activity would interfere with the efficient performance of official duties, or create a conflict or apparent conflict of interests." 413 U.S. at 577 n. 21, 93 S.Ct. at 2896 n. 21.
 
 
 10
 The attempted distinction between "activities" and contributions is too artificial to carry the day here. When the Senators used the word "activity," there was, we think, no reason to suppose that they harbored an unspoken intention to exclude from that category political contributions by State employees. They intended instead to leave the States free, so far as any claim of preemption was concerned, to allow or forbid political activities, including contributions, by their own employees.
 
 B.
 
 11
 In support of his argument that the statute violates the First Amendment, Reeder stresses that the campaign to which he contributed was a campaign for federal office, that the candidate he supported was actually a member of the City Council of Independence, Missouri, not of Kansas City, and that a member of Congress has no power to influence for good or ill the career of a city police officer. We are not persuaded that these considerations diminish the state's interest enough to require a decision in favor of the plaintiff. Politics, like law, is in many respects a seamless web. Candidates for public office often make, or appear to make, alliances among themselves. "The legislature would have good reason to think that a prohibition which did not extend to federal candidates and federal elections would be futile. The major parties operate on a national basis and function in federal, state and local contests .... A contribution to a congressional candidate well might benefit the local politicians who have made common cause with that candidate." Pollard v. Board of Police Comm'rs, supra, 340. Certainly the dangers posed by a direct contribution to a candidate for Mayor or Governor are more obvious, since the Mayor is a member of the Kansas City Board of Police Commissioners, and the Governor appoints the remaining members. But the difference between this kind of contribution and a contribution like the one Reeder made here is not sufficiently pronounced to require a holding that the latter may not be validly prohibited, even if the former may.
 
 
 12
 The fact is that public employees are subject to more severe restrictions than the public at large. No one would contend, for example, that Congress or a state legislature could forbid a member of the public from becoming a candidate for the state Senate. Yet, precisely that prohibition has been upheld by this Court as applied to an officer of the St. Louis Police Department. Otten v. Schicker, 655 F.2d 142 (8th Cir.1981). People who become public employees receive certain benefits and undertake certain duties. One of those duties may require the surrender of rights that would otherwise be beyond the reach of governmental power. This is especially true in the case of the police, whose duty it is to keep the peace by force of arms if necessary. "A state may demand of its police officers a more exacting standard of conduct than it could validly impose by criminal statute on citizens in general." Vorbeck v. Schicker, 660 F.2d 1260, 1267 (8th Cir.1981) (Arnold, J., concurring), cert. denied, 455 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462 (1982). It is proper for a state to insist that the police be, and appear to be, above reproach, like Caesar's wife.
 
 
 13
 It is undeniable that this kind of restriction does abridge the freedom of speech in a literal sense. But the Supreme Court has often stated that First Amendment rights, despite their preferred position in our constitutional scheme, are not absolute. They must yield on occasion to the demands of public safety. The Supreme Court has clearly stated that government may impose on its own employees rather substantial restrictions on political activity that is open without question to the citizenry at large. See Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). The same power that may prevent a public employee from making a political speech or conducting a political meeting (even on the employee's own time) may also forbid campaign contributions. Plaintiff cites Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam), and Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), in an effort to persuade us that the holdings in Mitchell, Letter Carriers, and Broadrick are out of date, but we are not convinced. Buckley does say that contributing to campaigns is an activity protected by the First Amendment, but Buckley involved a statute applicable to the public at large, not just to public employees. Elrod was a public-employee case, but it stands only for the proposition that a public official may not summarily dismiss his subordinates because of their ideology or political association. The interest there weighed against First Amendment rights was not really an interest of the state as a whole at all, but rather an individual interest of the newly elected official who wished to purge the ranks of his employees.
 
 
 14
 The Supreme Court has never spoken directly on the subject of political contributions by police officers or other public employees, but we find in Kelley v. Johnson, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976), an implication that restraints on campaign contributions would not be treated differently from other kinds of prohibitions against political activity that have been upheld. In Kelley the Court upheld a regulation of the Police Department of Suffolk County, New York, imposing certain limits on the length of police officers' hair. In the course of its opinion, after remarking that "we have sustained comprehensive and substantial restrictions upon activities of both federal and state employees lying at the core of the First Amendment," id. at 245, 96 S.Ct. at 1445, the Court set forth the following description of various restrictions imposed on police officers of Suffolk County by their employer:
 
 
 15
 The hair-length regulation here touches respondent as an employee of the county and, more particularly, as a policeman. Respondent's employer has, in accordance with its well-established duty to keep the peace, placed myriad demands upon the members of the police force, duties which have no counterpart with respect to the public at large. Respondent must wear a standard uniform, specific in each detail. When in uniform he must salute the flag. He may not take an active role in local political affairs by way of being a party delegate or contributing or soliciting political contributions. He may not smoke in public. All of these and other regulations of the Suffolk County Police Department infringe on respondent's freedom of choice in personal matters ....
 
 
 16
 Id. at 245-46, 96 S.Ct. at 1444-45 (emphasis ours). We do not pretend to find in this passage a holding that a prohibition against contributions is valid. That question was not presented in Kelley. There is, however, a fairly clear implication in the opinion that the six Members of the Court who joined it believed that a restriction on contributions would be upheld. There is no other good explanation for the Court's decision to list contributions in its opinion among those activities that the employees of the police department before it were not allowed to engage in.
 
 
 17
 In short, though the State of Missouri could certainly have made a different choice, the Supreme Court's cases compel the conclusion that the choice made here does not exceed the state's constitutional power under the First Amendment.
 
 II.
 
 18
 Plaintiff also argues that Sec. 84.830(1) violates the Equal Protection Clause of the Fourteenth Amendment. The statute applies to police officers in Kansas City only. No state statute forbids political contributions by other police officers, either state or local. In fact, Rule 7.012(a)(1)(h) of the St. Louis Police Department specifically permits police officers in that city to "make a financial contribution to a political party or organization." The District Court did not reach this question, having already held the statute invalid on other grounds.
 
 
 19
 We have power to affirm the judgment below on any ground supported by the record, whether or not raised or relied on in the District Court. See, e.g., Brown v. St. Louis Police Department, 692 F.2d 61 (8th Cir.1982). This power should normally be exercised only where the issue is one of law, no factual questions are outstanding that might affect its resolution, and there is no reason to believe that we would benefit from giving the opportunity to the District Court to address the question in the first instance. We believe this case is an appropriate one for a remand on the equal-protection issue. The District Court never addressed it, and the record before us is not really adequate to enable us to address it. The information cited above about the regulations of the St. Louis Police Department was supplied to us by stipulation after oral argument. We have no definite information about the rules or regulations of other police departments in Missouri. In addition, we think the defendants ought to be allowed a chance to offer evidence to justify the seeming disparity between Kansas City and other police departments in the state.
 
 
 20
 The Supreme Court of Missouri, Pollard v. Board of Police Comm'rs, supra, 342, rejected the equal-protection argument rather summarily, citing only our opinion in Otten v. Schicker, supra. But Otten involved an alleged discrimination between police officers on the one hand and other public employees on the other. That kind of distinction is easier to draw and to justify than a distinction between police officers in one city and police officers in another. In addition, this kind of classification, affecting as it does First Amendment rights, may require more than simply a rational basis to withstand constitutional attack. In short, the issue should be developed further on remand.
 
 
 21
 The judgment is reversed, and the cause remanded for further proceedings on the equal-protection claim in accordance with this opinion.
 
 
 22
 It is so ordered.
 
 
 
 *
 The Hon. Oren Harris, Senior United States District Judge for the Eastern and Western Districts of Arkansas, sitting by designation
 
 
 [1]
 Mo.Rev.Stat. Sec. 84.830, Police department--prohibited activities--penalties (Kansas City), provides in relevant part:
 No officer or employee in the service of said police department shall directly or indirectly give, pay, lend, or contribute any part of his salary or compensation or any money or other valuable thing to any person on account of, or to be applied to, the promotion of any political party, political club, or any political purpose whatever.
 Section 84.830(1) applies to Missouri cities with 300,000 to 700,000 inhabitants, Mo.Rev.Stat. Sec. 84.350, but is specifically classified under the heading "PROVISIONS APPLICABLE TO KANSAS CITY." Only Kansas City falls in the specified population range.
 
 
 [2]
 Contributions were permitted by paragraph (a)(8) of the section referred to. The regulations quoted by the Supreme Court thus used the term "activity" to include contributions