# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3156

_____

| | | |
|---|---|---|
| Janet LaMontagne, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Eastern |
| St. Louis Development Corporation, | * | District of Missouri. |
| A Missouri Not-for-Profit Corporation, | * | |
| and City of St. Louis, A Municipal | * | |
| Corporation, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  February 12, 1999

Filed: March 30, 1999

_____

Before WOLLMAN, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Janet LaMontagne was an employee of the St. Louis Development Corporation (SLDC) and an elected Democratic committeewoman for her ward in St. Louis, Missouri.  The SLDC, a not-for-profit corporation controlled by the City of St. Louis, adopted a rule prohibiting its employees from seeking or holding office in a political party.  When Ms. LaMontagne refused to resign her position as committeewoman, the SLDC terminated her employment.  Ms. LaMontagne sued under 42 U.S.C. § 1983,

alleging that the SLDC and the City of St. Louis had violated her rights under the first and fourteenth amendments. The district court[1] granted judgment on the pleadings to the defendants. Ms. LaMontagne appeals; we affirm.

I.

We review *de novo* the district court's decision to grant judgment on the pleadings, accepting as true all facts pleaded by Ms. LaMontagne and drawing all reasonable inferences in her favor. *Franklin High Yield Tax-Free Income Fund v. County of Martin,* 152 F.3d 736, 738 (8th Cir. 1998). Since the SLDC regulation itself is not in evidence, we assume for present purposes that it prohibits employees of the SLDC from seeking or accepting nomination, election, or appointment as an officer of a political party, which is how the complaint describes it.

Ms. LaMontagne contends that this restriction violates her first amendment rights of freedom of speech and freedom of assembly. As we have observed on more than one occasion, "[r]egulations limiting even those rights guaranteed by the explicit language of the Bill of Rights are reviewed more deferentially when applied to certain public employees than when applied to ordinary citizens." *Crain v. Board of Police Commissioners*, 920 F.2d 1402, 1408 (8th Cir. 1990); *see also Reeder v. Kansas City Board of Police Commissioners*, 733 F.2d 543, 547 (8th Cir. 1984), as well as *CSC v. National Association of Letter Carriers*, 413 U.S. 548, 567 (1973). In reviewing such regulations, we balance the employee's interest in commenting upon matters of public concern against the government's interest in limiting certain types of political activity. *See, e.g., National Association*, 413 U.S. at 564, and *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968).

---

[1]The Honorable Jean C. Hamilton, Chief United States District Judge for the Eastern District of Missouri.

The Supreme Court has examined state and federal restrictions analogous to the one that the SLDC imposes and has held that they do not amount to unconstitutional infringements on free speech because they serve legitimate government interests. *See*, *e.g.*, *United Public Workers v. Mitchell*, 330 U.S. 75, 101 (1947) (holding that Congress could constitutionally prohibit partisan political activities by federal employees since it could reasonably believe that such activities fostered the creation of political machines); *National Association*, 413 U.S. at 556, 564-66 (reaffirming the holding in *United Public Workers* and suggesting that restrictions might also promote the impartial execution of the laws and protect employees themselves from political pressure); and *Broadrick v. Oklahoma*, 413 U.S. 601, 602, 618 (1973) (upholding an Oklahoma statute that restricted the political activities of classified civil servants).

Federal appeals courts have interpreted *National Association* and *Broadrick* to mean that state and city governments may restrict the participation of their employees in a range of political activity. *See*, *e.g.*, *McCormick v. Edwards*, 646 F.2d 173, 179 (5th Cir. 1981), *cert. denied*, 454 U.S. 1017 (1981) (not unconstitutional for a state to dismiss a non-civil service employee for engaging in political activities prohibited for civil service employees), and *Magill v. Lynch*, 560 F.2d 22, 29 (1st Cir. 1977), *cert. denied*, 434 U.S. 1063 (1978) (upholding a city charter provision barring city employees from being candidates in even nonpartisan city elections). We have held that the St. Louis Police Department may prohibit its employees from running for public office without violating the officers' first amendment rights of free speech and association. *See Otten v. Schicker*, 655 F.2d 142, 144-45 (8th Cir. 1981).

We believe, therefore, that the SLDC's prohibition against serving as an officer of a political party falls squarely within the range of activity that government may reasonably restrict. In fact, one of the plaintiffs in *United Public Workers*, 330 U.S. at 94, like Ms. LaMontagne, was a ward committeeman of a political party, and the Oklahoma statute at issue in *Broadrick*, 413 U.S. at 606, provided in part that no

3–

employee "shall be a member of any national, state or local committee of a political party."

## II.

Ms. LaMontagne argues that it is the SLDC's burden to demonstrate that its legitimate interest in restricting her political activity outweighs her own interest in commenting on matters of common concern. In other words, she suggests that the court must examine the history behind and the reasons for this particular regulation and may not rely merely on precedent to conclude that legitimate government interests are at stake in this case. The case law is silent on the question of whether a court must have evidence of a government entity's actual reasons for restricting the political activity of its employees in order to balance the government's interest against that of the employee. We therefore look to the standard of review for the most closely analogous genre of cases, namely, the rational-relationship standard used to decide whether government policy violates the equal protection clause of the fourteenth amendment.

Our examination of equal protection cases leads us to believe that an evidentiary hearing is not required to determine whether a particular ordinance is a rational method of serving a legitimate goal. *See*, *e.g.*, *Bannum, Inc. v. City of St. Charles*, 2 F.3d 267, 272 (8th Cir. 1993). *See also McDonald v. Board of Election Commissioners*, 394 U.S. 802, 809 (1969) ("statutory classifications will be set aside only if no grounds can be conceived to justify them"); *Stiles v. Blunt*, 912 F.2d 260, 267 (8th Cir. 1990), *cert. denied*, 499 U.S. 919 (1991) ("whether or not these reasons were actually considered in enacting the minimum age requirement is irrelevant"); and *Zielasko v. State of Ohio*, 873 F.2d 957, 962 (6th Cir. 1989) ("[t]hat these reasons at least arguably provide a rational basis for the mandatory retirement of judges is sufficient for section 6(C) to survive under the constitutional standard we have described").

These cases suggest to us that a court deciding the constitutionality of a government restriction on the partisan political conduct of its employees need consider

only whether legitimate government interests are at stake; evidence of the government's actual reasons for imposing the restriction is not required. In fact, our decision in *Otten*, 655 F.2d at 144, was evidently based not on evidence of the St. Louis Police Department's reason for limiting political activity, but on the general principle that the department "may determine that political restrictions of the kind involved in this case serve several valid and important state interests." *See also National Association*, 413 U.S. at 564-67.

As evidence that the prohibition on seeking and holding office is arbitrary and therefore not legitimate, Ms. LaMontagne points to the fact that some SLDC employees are permitted to engage in political activity. Under the SLDC rule, the executive director and three additional employees whom he or she designates are permitted to engage in partisan political campaigns but remain subject to the prohibition against holding party office. Ms. LaMontagne argues that no reasonable government interest can be served by a regulation that prohibits all employees from serving as party committee-persons while allowing some employees to engage in partisan political campaigns. But the alleged inconsistencies between the prohibitions on her political activities and the regulations pertaining to other employees are not constitutionally relevant, except insofar as they might raise equal protection issues. Since Ms. LaMontagne has not made an equal protection claim, this argument fails.

Ms. LaMontagne further argues that restrictions on civil service employees are the only ones that have been held to be constitutional and that the record does not indicate that she is a civil service employee. We see nothing in the language or logic of the relevant cases that would limit their holdings to a particular class of government employees. The federal statutes that are presently in effect, moreover, prohibit political activities by "an employee ... employed or holding office in the Government of the United States or any agency or instrumentality thereof," *see* 5 U.S.C. § 7324(a)(2), and by state and city employees "whose principal employment is in connection with an activity ... financed ... by loans or grants made by the United

5–

States," *see* 5 U.S.C. § 1501(4). Although the Oklahoma statute at issue in *Broadrick* applied to classified civil servants and *Otten* dealt with police department regulations, the type of employee concerned was not a consideration in either decision, nor do the relevant statutes in effect at present distinguish between classes of employees, *see* 5 U.S.C. § 1501(4), § 1502(a). Ms. LaMontagne's employment status is therefore of no moment in the present context.

Finally, Ms. LaMontagne attempts to distinguish her case from *Otten* on the ground that the St. Louis Board of Police Commissioners was authorized to adopt regulations governing the appointment and employment of police officers, whereas there is no evidence that the SLDC has similar powers. For the purposes of this opinion, we accept her characterization of the SLDC as an agency of the City of St. Louis, and thus a government entity. Ms. LaMontagne does not point to any authority, however, that would suggest that some government entities lack the authority to restrict the political activities of their employees. We therefore reject her proposed distinction.

## III.

For the above reasons, we hold that the SLDC's restriction on Ms. LaMontagne's political activity as described in her complaint does not violate her rights under the first amendment, and, accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.