117 F.Supp.2d 922 (2000)
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO, LOCAL # 1, Anthony Bieg, Angelo Deluca, Dennis Dickhans, Robert Gerber, Robert Lohe, Olga Moriarty, Larry Pitcher and Dennis Walsh, Plaintiffs,
v.
ST. LOUIS COUNTY and William P. Grant, Lillie M. Thomas, Kathy L. Gibala in the official capacity as members of the St. Louis County Civil Service Commission, a commission organized and created by the St. Louis County Charter, Defendants.
No. 4:00CV1466-SNL.
United States District Court, E.D. Missouri, Eastern Division.
October 17, 2000.
*923 Sally E. Barker, Schuchat and Cook, St. Louis, MO, for Local 1 International Brotherhood of Electrical Workers, AFLCIO, plaintiff.
Michelle L. Wochner, St. Louis County Counselor's Office, Clayton, MO, for St. Louis County, a municipal corporation, defendant.

MEMORANDUM OPINION
LIMBAUGH, Senior District Judge.
On September 12, 2000 plaintiffs filed their complaint for violation of the First Amendment of the United States Constitution and § 1983 and requested that the Court issue a Temporary Restraining Order (TRO). On that date, the Court met with counsel for plaintiffs, and defendant St. Louis County. After the informal conference the Court concluded a TRO should not issue until there was some evidence presented as to the merits.
Counsel indicated that they felt the issue was a matter of law and that the facts could be stipulated to. Accordingly, the Court set the matter for argument on September 20, 2000 following which the matter was taken under advisement.
The parties filed joint stipulation of facts on September 19, 2000 and the issues have been briefed by the parties.
Counsel for defendant St. Louis County had the authority to enter that county's appearance and has filed an answer to the complaint on October 2, 2000. It was suggested that plaintiffs obtain service on the *924 individual defendants, William P. Grant, Lillie M. Thomas and Kathy L. Gibala. Counsel for St. Louis County stated that after service had been obtained such counsel would enter appearance for any individual defendant who requested that she represent them. Otherwise, such individual defendant would be required to obtain their own counsel.
The answer filed on behalf of St. Louis County was also filed on behalf of William P. Grant but no entry of appearance has been entered for defendants Thomas or Gibala and there is no record in the file of a return of service on such defendants. Nonetheless, the issues as submitted should be applicable to defendants Thomas and Gibala, assuming service has been obtained and a proper return filed, or if they enter their appearance through counsel at a later time. This Memorandum Opinion and ultimate order should not prejudice the rights of any of the parties because of the non-participation of defendants Thomas and Gibala.
On review of the complaint and answer and the joint stipulation of facts, the Court determines that it has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. All acts or practices alleged to be unlawful in the complaint were committed in the Eastern Division of the Eastern District of Missouri, and venue is proper here. 28 U.S.C. § 1391(a).
The Court adopts the following stipulation of facts, agreed to by plaintiffs and defendant St. Louis County and William P. Grant:
1. Plaintiff International Brotherhood of Electrical Workers, AFLCIO, Local # 1 (Local # 1) is an unincorporated labor organization that is the certified exclusive bargaining representative of Department of Public Works' Inspectors employed by defendant St. Louis County. Francis Dunsford (Dunsford) is the Business Representative of Local # 1.
2. Plaintiffs Anthony Bieg, Angelo Deluca, Dennis Dickhans, Robert S. Gerber, Robert W. Lohe, Olga Moriarty, Larry Pitcher and Dennis Walsh (hereafter collectively "Inspectors") are citizens of the United States, residents of the State of Missouri, and Department of Public Works' Inspectors employed by defendant St. Louis County. They are also members of Local # 1 and merit system employees. Their principal job duties are the inspection of buildings and construction for compliance with St. Louis County Ordinances.
3. Plaintiff Bieg has been employed with St. Louis County since 1995. Plaintiff DeLuca has been employed with St. Louis County since 1998. Plaintiff Dickhans has been employed with St. Louis County since 1990. Plaintiff Gerber has been employed with St. Louis County since 1998. Plaintiff Lohe has been employed with St. Louis County since 1998. Plaintiff Moriarty has been employed with St. Louis County since 1995. Plaintiff Pitcher has been with St. Louis County since 1979. Plaintiff Walsh has been employed with St. Louis County since 1996.
4. Defendant St. Louis County (County) is a County of the First Class of the State of Missouri operating under a special charter adopted by the voters of St. Louis County on November 6, 1979, pursuant to authority conferred by Article VI, § 18, et seq. of the Missouri Constitution (Charter).
5. Article VII (Merit System) of the Charter establishes a Civil Service Commission (Commission) composed of three residents of the County appointed by the County Executive subject to confirmation by the St. Louis County Council.
6. Defendants William P. Grant, Lillie M. Thomas and Kathy L. Gibala are members of the Commission. William P. Grant is the current Chairman of the Commission.
7. Section 7.030 of Article VII of the Charter empowers the Commission to: "Promulgate rules prohibiting employees and officers under the merit system from engaging in political activities or being required to make any political contributions."
*925 8. Plaintiffs challenge the constitutionality of the prohibitions of part of Rule XXIII adopted by the Commission. Portions of the Rule are set out as follows:
RULE XXIII
Political Activity
SECTION A. GENERAL POLITICAL
 ACTIVITY
1. POLITICAL SPEECHES AND CAMPAIGNINGNo person holding a position in the merit system shall ... [portions of this rule Plaintiffs do not challenge have been omitted] circulate, seek or secure signatures to any partisan petition provided for any primary, general or special election; act as a worker at the polls, or distribute literature, badges, labels, or insignia favoring or opposing a candidate for nomination or election, whether federal, state, county or municipal .... [portions of this rule Plaintiffs do not challenge have been omitted].

SECTION B. ASSESSMENTS AND
 CONTRIBUTIONS PROHIBITED
1. No employee in the merit system shall directly or indirectly make, solicit, receive, or be in any manner concerned in making, soliciting or receiving any assessment, subscription, or contribution to any political party, partisan candidate for political office, or any political purpose whatsoever.
2. As used in these rules, the terms "assessment," "subscription," and "contribution" are defined to include money or property, but shall not include annual membership dues in clubs or organizations nor shall it include reasonable consideration paid for tickets to political affairs or to dinners, but amounts paid which are in excess of the normal cost of attending the affair or dinner are financial contributions which employees in the merit system are prohibited from making to a political party or to a particular political candidate.
9. Section C of Rule XXIII provides that violations will result in immediate forfeiture of the employee's position if found guilty by the Commission on an action initiated by either the Appointing Authority or Personnel Director.
10. The Commission also promulgated and distributed to all merit system employees Guidelines interpreting Rule XXIII relating to Political Activity. Plaintiffs challenge the constitutionality of certain prohibitions of the Guidelines set out as follows:

INFORMATION FROM EMPLOYEE GUIDE ON GUIDELINES ON POLITICAL ACTIVITY
The Civil Service Commission has interpreted its Rule on Political Activity with reference to the following specific political activities:
Political Insignia on Automobile Bumpers and Windshields
 An employee cannot place political insignia on a private automobile used for public business. This prohibition is not affected by whether or not the employee receives compensation for the use of his/her automobile.
 An employee may place political insignia on a private car used for transportation to and from work, but not do so if such car is parked on County-owned or County-leased property.
Monetary Contribution to a Party or to a Particular Candidate
 An employee cannot make a financial contribution to a political party or to a particular candidate.
*926 Attendance at Picnics, Rallies, Dinners or Other Social Functions for a Particular Party or Candidate
 An employee may attend such social activities on a voluntary basis as long as the employee does not organize the activity or direct some function of it.
 An employee may pay a reasonable consideration for a ticket to a political affair or to a dinner but amounts paid which are in excess of the normal cost of attending the affair or dinner are financial contributions which employees are prohibited from making to a political party or to a particular candidate.
Performance of Political Clerical Work at Party or Candidate Headquarters
 An employee cannot perform clerical work for a political organization or a particular candidate, for example, stuffing and addressing envelopes.
Participation in Political Telephone Campaigning
 An employee cannot volunteer or assist in a telephone campaign for a particular party or candidate.
Political Placards on Premises of Private Home, Such as in the Yard
 The employee may place a political placard in the yard or in the windows of the employee's home, if such action is voluntary and without coercion.
 An employee cannot ask his/her neighbors or friends to display such political placards on premises of their homes.
Distribution of Literature and Insignia for a particular Party or Candidate
 An employee cannot distribute literature or insignia for a particular party or candidate.
Circulate or Seek Signatures to Partisan Petitions for Primary, General or Special Elections
 An employee may not seek, circulate or secure signatures to any partisan petition related to any primary, general or special election.
Membership in a Political Club
 An employee may belong to a political organization or club provided the employee does not hold an office in the organization or club or serve as a member of a committee.
 An employee, in attending the meetings of such organizations and clubs, may speak from the floor in favor of a particular candidate or issue, provided it is a private meeting not open to the public by general invitation.
 An employee, in attending such meetings, may introduce resolutions and motions in favor of a particular candidate, if the meeting is a private meeting not open to the public by general invitation.
Membership on Campaign Committees
 An employee cannot serve as a member of a campaign committee, even though the employee does not take an active part in the operations of the committee.
... [portions of these guidelines Plaintiffs do not challenge have been omitted].

Driving Voters to the Polls
 An employee cannot assist in an organized effort to drive or to get voters to the polls in partisan elections.
Delegate to a Political Meeting or Convention
An employee cannot serve as a delegate or alternate to a political meeting or convention.
11. Rule XXIII and the Guidelines interpreting it apply to Inspectors and other *927 County employees represented by Local # 1. Periodically, at least 10 times in the past several years, similar guidelines have been issued by the Commission.
12. If called to testify at the hearing on the preliminary injunction, Plaintiff Inspectors would testify that they wish to engage in activities, during their own time and not at work, which they believe are prohibited by Rule XXIII and by the Guidelines in support of partisan political campaigns for the November 7, 2000 elections. Examples of such activities include: stuffing envelopes, making telephone calls, and performing other clerical work; distributing candidate signs, buttons, other insignia and literature; displaying bumper stickers on their privately owned cars used for work and/or parked on County-owned lots; making financial contributions and attending social fund raising events; joining and fully participating in meetings of political clubs, including making statements on behalf of candidates at meetings open to the general public; driving voters to the polls and other "get-out-the-vote" activities.
13. If called to testify at the preliminary injunction hearing, Plaintiff Inspectors would testify that they wish to participate in activities prohibited by Rule XXIII and the Guidelines in order to have an impact on public policies of elected officials for state, federal and local municipal public office.
14. IBEW Local # 1 became the certified bargaining representative of the Inspectors in April 1999. Some of the Inspectors expressed to Dunsford their desire to be able to participate in the activities described in paragraph 12 during the 2000 election campaigns.
15. Dunsford wrote a letter dated October 21, 1999 to the Commission expressing concern about the validity of portions of Rule XXIII and the Guidelines and requesting modification of them.
16. Dunsford also appeared before the Commission on December 27, 1999 and expressed similar concerns.
17. In a letter dated December 9, 1999 the Commission responded by addressing the issue of the wearing of union insignia, and the issue of the political activity restrictions.
18. On February 23, 2000, after proper notice was given, the Commission held a public hearing regarding proposed Rules changes.
19. No representative from Local # 1 appeared at the hearing nor did any of the individual plaintiffs.
20. On June 19, 1999, counsel for Local # 1 contacted the County Counselor's office about the concerns of Local # 1 and the Inspectors.
21. Local # 1's legal counsel and Dunsford appeared before the Commission on July 27, 2000. They presented Local # 1's position that portions of Rule XXIII and the Guidelines were unconstitutional and that Inspectors wished to engage in off-premises, off-duty political support for candidates on the November 7, 2000 ballot. They stated that Local # 1 would litigate the issue in order to try to obtain relief in time for participation in the upcoming election campaigns if the rule and Guidelines were not modified. They requested a response from the Commission as soon as possible.
22. In a letter dated August 23, 2000 Commission Chair William P. Grant advised a representative of Local # 1 that the Commission would not make any changes in Rule XXIII or the Guidelines.
23. If called to testify at the preliminary injunction hearing, Defendant Commissioners would testify that they believe that contested portions of the Rule and guidelines prevent corruption and the appearance of corruption.
24. If called to testify at the preliminary injunction hearing, Defendant Commissioners would testify that they believe that *928 contested portions of the Rule and Guidelines avoid illicit pressure on employees to participate in political activities against their will.
25. If called to testify at the preliminary injunction hearing, Defendant Commissioners would testify that they believe that contested portions of the rule and Guidelines avoid the appearance that St. Louis County government itself takes sides in political campaigns or is itself controlling or run for the benefit of a partisan political group.
26. If called to testify at the preliminary injunction hearing, Defendant Commissioners would testify that they believe that government service should depend on meritorious performance rather than political service, and the political influence of government employees on others and on the electoral process should be limited.
27. If called to testify at the preliminary injunction hearing, Defendant Commissioners would testify that they believe that contested portions of the rule and Guidelines limit political influence on County employees which would undermine the notions of civil service.
28. If called to testify at the preliminary injunction hearing, Defendant Commissioners would testify that they believe that contested portions of the rule and Guidelines attract qualified people by guaranteeing job security and a work environment free from undue political pressures.
29. If called to testify at the preliminary injunction hearing, Defendant Commissioners would testify that they believe that contested portions of the Rule and Guidelines ensure impartial execution of laws.
30. If called to testify at the preliminary injunction hearing, Defendant Commissioners would testify that they believe that contested portions of the Rule and Guidelines promote the concepts of fair and effective government.
31. If called to testify at the preliminary injunction hearing, Defendant Commissioners would testify that they believe that after-hours political activity will cause the same evils as political activity during work hours.

CONCLUSIONS OF LAW
Factors which the Court will consider in order to determine whether or not to grant preliminary injunctive relief are as follows:
1. The threat of irreparable harm to the plaintiffs;
2. The state of balance between this harm and the injury that granting the injunction will inflict upon other parties-litigant;
3. The probability the plaintiffs will succeed on the merits; and
4. The public interest.
Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109 (8th Cir.1981). Although no one of these factors is determinative, Dataphase at 113, the resolution of the constitutional issue presented is paramount. If the Court determines that plaintiffs' First Amendment rights are violated by defendants' restriction of plaintiffs' partisan political conduct, and the conduct is not outweighed by the county's legitimate government interests, plaintiffs would probably succeed on the merits. Conversely, if the implementation by defendants of Rule XXIII and the Guidelines do not violate plaintiffs' First Amendment rights, defendants would probably succeed on the merits.
The regulation of government employees by prohibiting them from engaging in political activities has been a controversial issue for much of the twentieth century. Some government employees believe that restraints on their political activities violates their First Amendment rights. They assert that employees have a strong interest in engaging in political speech. They aver, as plaintiffs do here, that "The First Amendment affords the broadest protection to ... political expression in order to assure the unfettered interchange of ideas *929 for the bringing about of political and social changes desired by the people." Buckley v. Valeo, 424 U.S. 1, 14, 96 S.Ct. 612, 632, 46 L.Ed.2d 659 (1976).
The courts have generally held that Congressional intent suggested "Partisan political activities by federal employees must be limited if the government is to operate effectively and fairly, elections are to play their proper part in representative government, and employees themselves are to be sufficiently free from improper influences." CSC v. National Association of Letter Carriers, 413 U.S. at 548, 564, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973), and that "It is not only important that the government and its employees in fact avoid practicing political justice, but it is also critical that they appear to the public to be avoiding it, if confidence in the system of representative government is not to be eroded to a disastrous extent." National Association, 413 U.S. at 565, 93 S.Ct. 2880.
Even though there were divergent points of view, Congress passed the Hatch Act in 1940 which restricted certain specified political activities of federal employees. "The Hatch Act commonly denotes two laws passed in 1939 and 1940 which restrict the political activities of public employees. One part covers federal employees. 5 U.S.C. § 7321 et seq., 53 Stat. 1147 (Aug. 2, 1939). The second part applies to employees of state and local agencies that receive federal funds. 5 U.S.C. § 1501 et seq., 54 Stat. 767 (July 19, 1940)." Bauers v. Cornett, 865 F.2d 1517, 1519 (8th Cir. 1989).
The evolution of the Hatch Act with subsequent amendments is set out fully in National Association, 413 U.S. at 554, 93 S.Ct. 2880 to 567. This evolution includes the determination by Congress that the prohibition against taking an active part in political management and political campaigns should be extended to the entire federal service. 53 Stat. 1147, National Association, at 560, 93 S.Ct. 2880.
The National Association court observed from Congressional debate over amendments to the Hatch Act, "A major thesis of the Hatch Act is that to serve this great end of governmentthe impartial execution of the lawsit is essential that federal employees, for example, not take formal positions in political parties, not undertake to play substantial roles in partisan political campaigns and not run for office on partisan political tickets. Forbidding activities like these will reduce the hazards to fair and effective government." National Association, 413 U.S. at 565, 93 S.Ct. 2880. Further Congressional debate suggested that "A related concern, and this remains as important as any other, was to further serve the goal that employment and advancement in the Government service not depend on political performance, and at the same time to make sure that Government employees would be free from pressure and from express or tacit invitation to vote in a certain way or perform political chores in order to curry favor with their superiors rather than to act out their own beliefs." National Association, 413 U.S. at 566, 93 S.Ct. 2880.[1]
The constitutionality of the initial Hatch Act was approved. United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). The Mitchell decision was reaffirmed by companion cases decided in 1973. National Association, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 and Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830, (upholding an Oklahoma statute that restricted the political activities of classified civil servants).
The National Association court stated that "we unhesitatingly reaffirm the Mitchell holding that Congress had, and *930 has, the power to prevent Mr. Poole[2] and others like him from holding a party office, working at the polls, and acting as party paymaster for other party workers. An act of Congress going no further would in our view unquestionably be valid. So would it be if, in plain and understandable language, the statute forbade activities such as organizing a political party or club; actively participating in fund-raising activities for a partisan candidate or political party; becoming a partisan candidate for, or campaigning for an elective public office; actively managing the campaign of a partisan candidate for public office; initiating or circulating a partisan nominating petition or soliciting votes for a partisan candidate for public office; or serving as a delegate, alternate or proxy to a political party convention. Our judgment is that neither the First Amendment nor any other provision of the Constitution invalidates a law barring this kind of partisan, political conduct by federal employees." National Association, 413 U.S. at 556, 93 S.Ct. 2880.
The National Association and Broadrick cases have been interpreted by United States and State of Missouri courts to mean that in addition to Congress, state, county and city governments may also restrict the participation of their employees in a wide range of political activity. In LaMontagne v. St. Louis Development Corporation, 172 F.3d 555 (8th Cir.1999), the SLDC, a not-for-profit corporation controlled by the City of St. Louis, adopted a rule prohibiting its employees from seeking or holding an office in a political party. Plaintiff was a committee woman and refused to resign her position, and was terminated by SLDC. The Court held that SLDC's restriction on plaintiff's political activity did not violate her rights under the First Amendment.
The case of Reeder v. Kansas City Board of Police Commissioners, 733 F.2d 543 (8th Cir.1984) considered the constitutionality of the State of Missouri statute forbidding officers or employees of the Kansas City Police Department to make political contributions. Plaintiff, a Kansas City police sergeant, gave $500 to the campaign of John Carnes, a candidate for the Democratic nomination for representative in Congress from Missouri's Fifth District. He was dismissed from the police force because of the violation, and the court determined that the Missouri statute did not violate plaintiff's freedom of speech First Amendment rights.[3] In that case, plaintiff stressed that the campaign to which he contributed was a campaign for federal office, and the candidate he supported was a member of the City Council of Independence, Missouri and not of the City Council of Kansas City. He felt that a member of Congress has no power to influence for good or ill the career of a city police officer and that, therefore, the statute violated his First Amendment rights. The court held at 547 that "We are not persuaded that these considerations diminish the state's interest enough to require a decision in favor of plaintiff." The court in Reeder suggested that "a contribution to a congressional candidate well might benefit the local politicians who have made common cause with that candidate." Reeder, 733 F.2d at 547, Pollard v. Board of Police Comm'rs., 665 S.W.2d 333 (Mo.1984) (en banc).[4] It is also important to note that in *931 Reeder the court observed that "the Supreme Court has never spoken directly on the subject of political contributions by police officers or other public employees, but we find in Kelley v. Johnson, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976), an implication that restraints on campaign contributions would not be treated differently from other kinds of prohibitions against political activity that have been upheld." Reeder, 733 F.2d at 548.
In Bauers v. Cornett, 865 F.2d 1517 (8th Cir.1989) the court addressed a situation where part of the employee's activity could be constitutionally protected and part not. The court held that a state employee's posting of flyers soliciting money to reimburse paid lobbyists could be protected speech. The facts revealed, however, that some of the money solicited and given to the lobbyists might be placed into the hands of legislators selected in partisan elections which would violate the Hatch Act and Missouri law.[5]
A St. Louis city police department regulation prohibiting employees of the department from running for elective public office was found not to violate the First Amendment rights of the employees and was also found not to be vague or overbroad and did not violate the equal protection rights of the officers. Otten v. Schicker, 655 F.2d 142 (8th Cir.1981).
In Connealy v. Walsh, 412 F.Supp. 146 (W.D.Mo., 1976) plaintiff was employed as a social worker by the Jackson County Missouri Juvenile Court. The Juvenile Court personnel policies provided no employee of the court shall be involved in any way in partisan, political activities. Plaintiff and others displayed political bumper stickers on their automobiles parked in the Juvenile Court parking lot. The judge of the Circuit Court having jurisdiction over the Juvenile Division where plaintiff worked sent a memorandum to the staff stating that no staff member may be involved in any political action of any sort and that includes bumper stickers. Plaintiff was ultimately discharged for failure to remove her bumper sticker, and the district court held that the bumper sticker prohibition promoted state interests which outweighed plaintiff's First Amendment rights.
The case of Magill v. Lynch, 560 F.2d 22, 29 (1st Cir.1977), cert. denied, 434 U.S. 1063, 98 S.Ct. 1236, 55 L.Ed.2d 763 (1978) upheld the city charter of Pawtucket, Rhode Island barring city employees, including firemen, from being candidates in not only partisan, but non-partisan city elections as well.
The city of Dallas, Texas had a charter prohibiting city employees from making contributions to city council candidates. The enforcement of this charter provision as to firemen and policemen of the City of Dallas did not violate those employees' First Amendment rights. Wachsman v. City of Dallas, 704 F.2d 160 (5th Cir.1983).
In Smith v. United States, 502 F.2d 512 (5th Cir.1974) the Veteran's Administration Hospital in Dallas, Texas had a policy preventing employees of the hospital, who are required to wear uniforms, from wearing peace buttons, armbands, etc. while they are on duty. A clinical psychologist at the hospital elected to wear on his lapel a peace pin in violation of the policy. The court upheld his discharge for violation of the policy holding that the wearing of the *932 pin was not protected by the First Amendment.
In Bruno v. Garsaud, Jr., 594 F.2d 1062 (5th Cir.1979) the city of New Orleans, Louisiana police officer challenged prohibitions against engaging in political activity set out in the Louisiana Constitution. The police officer sponsored a post-election banquet honoring a New Orleans city councilman and gave one-half of the proceeds from the banquet to the councilman and the other half to another political candidate. The court held that the provisions of the Constitution did not violate the police officer's First Amendment rights nor were the provisions unconstitutionally overbroad.
The court held in McCormick v. Edwards, 646 F.2d 173, 179 (5th Cir.1981), cert. denied 454 U.S. 1017, 102 S.Ct. 552, 70 L.Ed.2d 415 (1981) that it was not unconstitutional for the state of Louisiana to dismiss a non-civil service employee for engaging in political activities prohibited for civil service employees.[6]
This Court is mindful that in reviewing St. Louis County's rules and guidelines concerning employee political activity, it is necessary to balance the employee's interest in commenting upon matters of public concern against the government's interest in limiting certain types of political activity. LaMontagne, 172 F.3d at 557, National Association, 413 U.S. at 564, 93 S.Ct. 2880, Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and Belk v. City of Eldon, 228 F.3d 872 (8th Cir.Mo.). The court finds that in this case the scales tip in favor of the County to limit certain types of its employees' political activity.
A special charter adopted by the voters of St. Louis County went into effect November 6, 1979. The charter provided for the establishment of a Civil Service Commission and that Commission has promulgated certain rules prohibiting county employees from engaging in political activities, or being required to make political contributions. Portions of Rule XXIII and the Guidelines interpreting that rule are objected to in this case. Plaintiffs are employed by St. Louis County as Department of Public Works' inspectors. They inspect buildings and construction to determine if there is compliance with St. Louis County ordinances. They aver that they wish to engage in activities during their own time in support of partisan political campaigns for the November 7, 2000 elections. They would like to stuff envelopes, make telephone calls, perform clerical work, distribute candidate signs, buttons, other insignia and literature. They would like to display bumper stickers on their privately owned cars used for work and parked on county-owned lots and would like to make financial contributions to, and make statements on behalf of candidates at meetings open to the general public. They would like to drive voters to the polls and participate in other get-out-the-vote activities. This court believes that they may not do these things because of the restrictions placed on them by the county rules and guidelines and that such rules and guidelines do not infringe on their First Amendment rights.
The court in National Association as set out earlier held that neither the First Amendment nor any other provision of the Constitution invalidates a law barring certain kinds of partisan political conduct by federal employees. That conduct included "actively participating in fund-raising activities for a partisan candidate or political party; becoming a partisan candidate for, or campaigning for an elective public office; ... initiating or circulating a partisan nominating petition or soliciting votes for a partisan candidate for political office." *933 National Association, 413 U.S. at 556, 93 S.Ct. 2880.
Rule XXIII(a)(1) prohibits plaintiffs from circulating a partisan petition provided for any primary, general or special election. Under National Association and its progeny, this is not protected speech.
Rule XXIII(a)(1) also prohibits plaintiffs from working at the polls distributing literature, badges labels or insignia favoring or opposing a candidate for nomination or election, whether federal, state, county or municipal. This type of activity, if permissible, would enable an employee to assist or oppose a candidate for office. The purpose of distributing literature, badges, labels or insignia is to encourage persons to vote for or against a partisan candidate for public office, or a party. None of this is protected speech under National Association.
Rule XXIII § B1 prohibits plaintiffs from making or soliciting contributions to a political party or partisan candidate for political office. As stated, National Association holds that it is not a First Amendment violation to prohibit an employee from "actively participating in fund-raising activities for a partisan candidate or political party." Id., at 556, 93 S.Ct. 2880.
Plaintiffs also assert that the guidelines as to political activity abridge their rights. Plaintiffs wish to place political insignias on their private automobiles which are parked on county-owned or county-leased property and they may not do so because such displays are nothing more than a solicitation for votes for a partisan candidate for public office. The guidelines permit plaintiffs to display such insignias on their cars if they are not parked on county-owned or county-leased property. See Connealy v. Walsh, 412 F.Supp. 146.
Making contributions to a party or candidate or attending picnics, rallies, dinners or other social functions for a party or candidate are nothing more than actively participating in fundraising activities for, or soliciting votes for a partisan candidate or political party, all non-protected free speech activities. National Association, id. at 556, 93 S.Ct. 2880. Nonetheless, the prohibition from attendance at these events is not absolute. Under the guidelines, an employee may attend these activities on a voluntary basis as long as the employee does not organize the activity or direct some function of it. The employee may pay a reasonable amount for a ticket to a political affair but any sum in excess of the reasonable consideration is considered a financial contribution prohibited.
The guidelines prohibit plaintiffs from performing clerical work for a political organization or candidate such as stuffing or addressing envelopes. Plaintiffs also cannot assist in a telephone campaign for a party or candidate or distribute literature or insignia for a party or candidate or seek signatures to a partisan petition related to a primary, general or special election. No one of these functions is protected speech. All of them involve soliciting votes for a partisan candidate for public office. Again, the prohibition in these areas is not absolute. An employee may place a political placard in the yard or windows of the plaintiff's home if the action is voluntary and without coercion. Plaintiffs may belong to a political organization provided they do not hold office, or serve as a member of a committee; plaintiffs may attend meetings of the political organizations and speak from the floor in favor of a candidate or issue provided that it is not a public meeting. Plaintiffs may attend such meetings or introduce resolutions and motions in favor of a particular candidate, again provided the meeting is not public.
The guidelines finally state that plaintiffs cannot serve as a member of a campaign committee, cannot assist in an organized effort to drive or get voters to the polls in partisan elections and cannot serve as a delegate or alternate to a political meeting or convention. These restrictions, too, do not constitute protected speech. National Association expressly holds that the prohibition against serving as a delegate, *934 alternate or proxy to a political party's convention does not run afoul of the First Amendment. National Association, id. 556, 93 S.Ct. 2880.
Plaintiffs urge the Court to follow the decision in Goodman v. City of Kansas City, 906 F.Supp. 537 (W.D.Mo.1995). Although there are some facts in the Goodman case which may be analogous to the facts in this case, Goodman can be distinguished.
In Goodman plaintiffs were employees of the Water Department and Fire Department of Kansas City. The City Manager issued an administrative regulation prohibiting city employees from making a public display of political support of any candidate for city council, mayor or persons seeking retention as a judge of the Kansas City municipal division of the circuit court. The prohibition extended to wearing buttons, displaying bumper stickers or signs or participating in political campaign activities. Employees could not display a bumper sticker urging the election or defeat of a candidate or political party on a vehicle which would be parked in a parking lot controlled by the city. A memorandum from the city manager also provided that while off work, a city employee may not attend fundraisers, rallies and other gatherings.
The case was submitted on requests for summary judgment. The court sustained the plaintiffs' motion for summary judgment and permanently enjoined the city from enforcing the restrictions described.
The Goodman case was decided on summary judgment and this case involves a decision as to whether a preliminary injunction should or should not issue. The standards are different. The court noted in Goodman that the city failed to demonstrate that the regulations challenged address "real and not merely conjectural" harms. The city provided no affidavits, documents, depositions or other evidence supporting its allegations that the restrictions are justified by public necessity. Goodman at 544. The court in Goodman held that since the city had not properly presented facts justifying its regulation of the city employees' rights to express themselves on political issues the Pickering balancing test favored the city employees' speech, free of the challenged regulations.
Here, the Court determines from the stipulated facts that the county has presented facts justifying their regulations of their employees in the political arena. This Court, therefore, weighs the Pickering test in favor of the county.
In considering plaintiffs' First Amendment rights in Goodman the court stated that First Amendment protection has been extended to cover political buttons, bumper stickers and signs. Support for this statement was Smith v. United States, supra as to buttons, Connealy v. Walsh, supra as to bumper stickers and City of Ladue v. Gilleo, 512 U.S. 43, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994) as to yardsigns. Considering the facts in Smith and Connealy earlier in this opinion, the Court noted that buttons and bumper stickers involved in those cases were not protected by the First Amendment because of the overriding government's interest. As to the City of Ladue case, there is no prohibition by the county against an employee placing a political placard in the employee's yard or windows of the home if the action is voluntary and without coercion.
In addition, it appears to this Court that the decision in Goodman runs afoul of U.P.W.A. v. Mitchell, supra, National Association of Letter Carriers, supra and Broadrick v. Oklahoma, supra. This Court, therefore, is unable to follow the decision in Goodman.
The County of St. Louis, and its Commissioners, pursuant to its charter have determined that the rules and guidelines complained of here avoid illicit pressure on employees to participate in political activities against their will. They enable the county government to avoid taking sides in political campaigns or controlling or running for the benefit of partisan political *935 groups. The rules and guidelines prevent corruption, the appearance of corruption[7] and limit political influence on county employees which would undermine the notions of civil service and attract qualified people by guaranteeing a work environment free from undue political pressure. These lofty pursuits under Pickering cause this Court to find that the county's interest in limiting certain types of political activity of its employees overshadows the employees' interest in commenting upon matters of public concern. This is especially true here as the county has demonstrated that it has legitimate government interests at stake, and that the restrictions serve these legitimate, valid and important state interests. LaMontagne v. St. Louis Development Corporation, 172 F.3d at 558.[8]
The First Amendment to our Constitution affords our citizens with some of our most cherished rights; nonetheless, the amendment is not absolute. Persons going into government service, even at the local level, must remember that in so doing, they give up a portion of their personal sovereignty. The balance of this loss weighs in favor of governmental entities which must remain as aloof as possible from political involvement, and so it is here. Partisan political activity restrictions on plaintiffs and other county employees is not to onerous a price to pay. See Reeder v. Kansas City Board of Police Comm'rs., 733 F.2d at 547.
As it has been determined that Rule XXIII and the guidelines of the county do not violate plaintiffs' First Amendment rights, the Court finds that defendants would likely succeed on the merits. It would appear, therefore, that there is no threat of irreparable harm. The absence of a showing of the threat of irreparable harm is sufficient ground for denying the preliminary injunction. Roberts v. VanBuren Public Schools, 731 F.2d 523, 526 (8th Cir.1984).
As the Court has determined that Rule XXIII and the guidelines are not violative of plaintiffs' First Amendment rights and that defendants would therefore likely succeed on the merits, and that there would be no irreparable harm suffered by the plaintiffs, it is unnecessary to consider the other two elements of the Dataphase case involving the issuance of a preliminary injunction. It is also unnecessary to consider the affirmative defense of laches urged by defendants. The request for a preliminary injunction should be denied.
NOTES
[1] In addition to the limitation by the federal government, all 50 states have also restricted the political activities of their own employees. Broadrick v. Oklahoma, 413 U.S. 601, 604, 93 S.Ct. 2908, 2912 n. 2, 37 L.Ed.2d 830 (1973).
[2] Poole, a federal employee, was a ward executive committee man of a political party and was politically active on election day as a worker at the polls and a paymaster for the services of other party workers. National Association, 413 U.S. at 554, 93 S.Ct. 2880.
[3] The case was remanded for further proceedings on plaintiff's claim that the statute deprived him of the equal protection of the laws because it applies to Kansas City police officers, but no others in Missouri.
[4] The Pollard court also examined the constitutionality of the State of Missouri statute considered in Reeder. Pollard, also a Kansas City police officer, was terminated for making a $1,000 contribution to the same political committee formed to promote the nomination of John Carnes as Reeder contributed to. The Missouri court in Pollard determined that the Missouri law prohibiting such contributions by the police officer did not violate the officer's First Amendment rights. Pollard also held that the Missouri law involved, § 84.830 R.S.Mo.1978, was not preempted by the Federal Election Campaign Act of 1971 as amended. The court, in Reeder, indicated that the Pollard decision was handed down after oral argument in the Reeder case and although the federal courts are not bound by Missouri opinions, Judge Richard S. Arnold, writing for the court in Reeder, found the Pollard opinion to be thorough and persuasive and agreed with it, both as to preemption and the First Amendment analysis. Reeder, 733 F.2d at 545.
[5] The Bauers case was remanded for further consideration of whether some relief could be crafted that would allow solicitations for lawful purposes.
[6] While the courts have suggested, in some of the cases described, that the political activity prohibited may be protected, all have held the protection is overcome by the government's prevailing interest.
[7] See Nixon v. Shrink, 528 U.S. 377, 120 S.Ct. 897, 145 L.Ed.2d 886 (2000).
[8] The courts ruling here is not affected by the plaintiff's requests to engage in political activity outside the workplace. As was so artfully stated in Mitchell, "The influence of political activity by government employees, if evil in its effects on the service, the employees or people dealing with them, is hardly less so because that activity takes place after hours." United Public Workers of America v. Mitchell, 330 U.S. at 95, 67 S.Ct. 556.